RENDERED:  AUGUST 29, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1320-ME

L.D.D., THE NATURAL MOTHER                                        APPELLANT


                APPEAL FROM MUHLENBERG CIRCUIT COURT
v.              HONORABLE BRIAN WIGGINS, JUDGE
                ACTION NO. 24-AD-00016


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; D.G., FATHER;
AND D.L.R.G., A MINOR CHILD                                       APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, A. JONES, AND MOYNAHAN, JUDGES.

CALDWELL, JUDGE:  L.D.D. ("Mother") appeals from the involuntary

termination of her parental rights to D.L.R.G., a minor child ("Child").[1]  We

affirm.

---

[1] To protect the privacy of the minor child and pursuant to court policy, we do not refer to the minor child or his natural parents by name.  *See also* Kentucky Rules of Appellate Procedure

# FACTS

Mother gave birth to Child in November 2019. On June 1, 2022, the Cabinet for Health and Family Services (the "Cabinet") filed a dependency, neglect, and abuse ("DNA") petition regarding Child along with a supporting affidavit. A social worker averred that Child had access to methamphetamine in mid-May 2022 when Father was arrested. According to the affidavit, Mother was not present at the time of this incident and a social worker created a plan for Child to remain in Mother's care but for Father not to be in a sole caregiver role.

The social worker also averred that in late May the family had been evicted from their apartment, where the walkways were obstructed with clothes and debris. Shortly thereafter, the family claimed to be moving elsewhere but were soon found in their apartment where the social worker recounted telling them they could not stay due to conditions, including dog feces on the floor. The social worker also averred that Mother declined housing options offered to her (such as the Salvation Army) and reported she would stay in a home which the social worker deemed inappropriate because another client whose children were removed due to substance abuse lived there. According to the social worker, Mother was not truthful with her and did not cooperate when asked about placing Child with a

---

(RAP) 5(B)(2). The parental rights of the natural father, D.G. ("Father") were also terminated. However, Father has not appealed from the termination of his parental rights.

family member.  The Cabinet requested emergency custody of Child and placement with a relative.

The district court entered an order placing Child in the Cabinet's emergency custody.  Initially, Child was placed with a relative.  However, a few weeks later, the relative contacted the social worker to say she could no longer care for Child.  Thus, Child was placed in foster care under the Cabinet's custody in late June 2022.

In late October 2022, the district court entered an order noting that Mother stipulated that Child was neglected or abused.  It also found that Mother had not provided Child with adequate care, food, clothing, shelter, and other necessities.  In January 2023, Child was committed to the Cabinet.

In late April 2024, the Cabinet filed a petition for involuntary termination of parental rights in circuit court, alleging three grounds of parental unfitness.  First, the Cabinet alleged that Mother had continuously or repeatedly failed to provide essential parental care and protection for Child and there was no reasonable expectation of improvement in this regard considering Child's age.  Second, the Cabinet also alleged that, for reasons other than poverty alone, Mother had continuously or repeatedly failed to provide necessities such as food, clothing, shelter, or medical care and that there was no reasonable expectation of significant improvement in her conduct in the near future given Child's age.  Third, the

Cabinet alleged that Child had been in foster care under its responsibility for fifteen cumulative months out of the forty-eight months preceding the filing of the petition to terminate parental rights.

The Cabinet also alleged that it was in Child's best interest to terminate Mother's parental rights since Mother failed to take the necessary steps to regain custody of Child or to maintain consistent contact with Child. It also asserted it had made reasonable reunification efforts, including preparing a case plan and offering services to Mother, but Mother did not take advantage of all offered services and failed to complete all case plan requirements.

The circuit court appointed an attorney to represent Mother in the termination proceedings. The case proceeded to a final evidentiary hearing which was held in September 2024. The Cabinet presented the testimony of Child's foster mother and a social worker who had been working with the family from January 2023 until shortly before the hearing. Next, Mother testified on her own behalf. Lastly, the Cabinet called a new social worker recently assigned to Mother's case in rebuttal.

In early October 2024, the circuit court entered an order terminating Mother's parental rights along with supporting Findings of Fact and Conclusions of Law. Mother filed a timely notice of appeal.

Mother's attorney filed an *Anders* brief,[2] stating he concluded there were no meritorious grounds for an appeal. He also filed a motion to withdraw. He certified that he provided Mother with a copy of the *Anders* brief and motion to withdraw. He also certified that he informed her of her right to file a supplemental *pro se* brief to raise any issues she deemed to be meritorious.

In late January 2025, this Court entered an order passing the motion to withdraw to the merits and informing Mother that she had thirty days to file a supplemental brief. However, Mother has not filed a supplemental brief.

Upon review, we grant Mother's counsel's motion to withdraw by separate order and affirm the family court's termination of Mother's parental rights. Further facts will be provided as necessary in our analysis.

## ANALYSIS

### *Anders* Brief Considerations

We set forth the procedure for considering *Anders* briefs in Kentucky involuntary termination of parental rights cases in *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361, 371 (Ky. App. 2012).

If counsel concludes there are no proper grounds for appellate relief from an involuntary termination of parental rights, counsel must nonetheless submit a brief "'referring to anything in the record that might arguably support the

---

[2] *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

appeal.'" *Id.* (quoting *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400). However, the *Anders* brief filed here does not refer to anything in the record that might arguably support the appeal. Nonetheless, we "are obligated to independently review the record and ascertain whether the appeal is, in fact, void of nonfrivolous grounds for reversal." *A.C.*, 362 S.W.3d at 372 (citing *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400).

Such review is analogous to a palpable error review, requiring only that we ascertain whether any error affects the substantial rights of a party. *A.C.*, 362 S.W.3d at 370. If such a review results in the Court's agreement with an appellant's counsel that there is no nonfrivolous ground for appealing the termination of parental rights, it is appropriate to affirm the circuit court. *Id.* at 372. Nonetheless, in considering the circuit court's decision upon our independent review of the record, we keep in mind statutory requirements for granting a petition for involuntary termination of parental rights. *See id.* at 371-72 (noting involuntary termination of parental rights "requires strict application of statutory standards").

**Statutory Requirements for Involuntary Termination of Parental Rights**

Before terminating parental rights, the circuit court must find clear and convincing evidence[3] to support each of the three parts of the standard established by KRS[4] 625.090.  First, the child must have been found to be an "abused or neglected" child as defined by KRS 600.020(1).  KRS 625.090(1)(a).  Second, the circuit court must find at least one ground of parental unfitness as set forth in KRS 625.090(2).  Third, termination must be in the child's best interest.  KRS 625.090(1)(c).  In determining the child's best interest and whether there are ground(s) of parental unfitness, the circuit court must consider the factors listed in KRS 625.090(3).

**Requirements for Reviewing Involuntary Termination of Parental Rights**

"[T]ermination of parental rights is a grave action which the courts must conduct with utmost caution."  *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 359 (Ky. 2022) (internal quotation marks and footnote omitted).  Thus, the evidence to support termination must be clear and convincing.  KRS 625.090; *see also Santosky v. Kramer*, 455 U.S. 745, 769-70, 102 S. Ct. 1388, 1403, 71 L. Ed. 2d

---

[3] *Clear and convincing evidence* "does not necessarily mean uncontradicted proof.  It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people."  *Cabinet for Health and Family Services v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010) (internal quotation marks and citations omitted).

[4] Kentucky Revised Statutes.

599 (1982) (holding due process requires proof by at least clear and convincing evidence for termination of parental rights).

Even so, the decision of a circuit court to involuntarily terminate parental rights is accorded great deference on appellate review. The circuit court's factual findings are reviewed under the "clearly erroneous" standard of CR[5] 52.01,[6] meaning they shall not be disturbed unless they are not supported by substantial evidence. *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116 (Ky. App. 1998). We review the circuit court's determination that termination of parental rights is in a child's best interest for abuse of discretion. *D.J.D. v. Cabinet for Health and Family Services*, 350 S.W.3d 833, 837 (Ky. App. 2011).

**Circuit Court Made Statutorily Required Findings**

The circuit court made the findings required in KRS 625.090 by clear and convincing evidence—specifically including 1) Child's being an abused or neglected child, 2) at least one ground of parental unfitness, and 3) termination being in Child's best interest. And based upon our review of the record, substantial evidence supports the circuit court's factual findings on these matters.

---

[5] Kentucky Rules of Civil Procedure.

[6] CR 52.01 states in pertinent part: "Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

The circuit court also appropriately considered factors listed in KRS 625.090(3) for assessing whether termination was in Child's best interest.

**No Reversible Error in Circuit Court's Finding That Child Was Neglected**

The circuit court noted that the district court had adjudicated that Child was an abused or neglected child in the DNA case. The circuit court also made an independent finding by clear and convincing evidence that Child is a neglected child as defined by KRS 600.020(1).

The court noted the Cabinet had provided a case plan and recommended services for Mother. It further found the social worker had consistent contact with her and was able to discuss and offer services to help Mother follow all recommendations contained in her case plan. The court found Mother failed to establish stable housing for any significant time and that she claimed to be employed by a taxicab company but failed to provide proof of employment. It also found that a main cause of the removal was unsafe conditions in the home and that a Cabinet worker reported observing unsanitary conditions in Mother's home the week before the hearing.

The court also found Mother completed a mental health assessment but failed to attend therapy as often as recommended. It further found Mother completed a parenting class but failed to submit to a substance abuse assessment. The court found Mother tested positive for methamphetamine twice during the past

two years and Mother had refused to submit to drug screens about ten times. It also found that Mother had mostly been consistent about visiting Child, but that Mother did not provide support except for providing a few clothing items. It noted Mother had been incarcerated twice for short periods, which it found did not substantially interfere with her ability to make progress on her case plan.

The court found there were no barriers to Mother's making progress on her case plan and she was provided ample opportunities and assistance for over two years. Ultimately, the court found that despite Mother's making some progress on her case plan, Mother had not made sufficient progress to allow for Child to safely be returned to her care.

Based on our review of the record, the circuit court's findings that Child had previously been adjudicated neglected and remained neglected based on Mother's lack of full compliance with case plan requirements are supported by substantial evidence and thus not clearly erroneous. Next, we address the court's findings of grounds of parental unfitness.

### No Error in Finding At Least One Ground of Parental Unfitness as Set Forth in KRS 625.090(2)

The record adequately supports the circuit court's determination that the Cabinet proved the existence of at least one ground of parental unfitness by clear and convincing evidence. Specifically, the record clearly—even indisputably—supports the circuit court's finding of the ground set forth in KRS

625.090(2)(j): "That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights[.]"

The circuit court found by clear and convincing evidence that Child had remained in the Cabinet's custody since late June 2022 and this finding is supported by substantial evidence. Moreover, Mother has not disputed that Child had remained in foster care since late June 2022 based on our review of the record. Thus, the circuit court correctly concluded that Child had been in foster care under the Cabinet's responsibility for at least fifteen cumulative months of the forty-eight months preceding the filing of the petition, thus satisfying KRS 625.090(2)(j). (The petition had been filed in late April 2024—almost two years after Child entered foster care in late June 2022.)

In short, there is no error in the circuit court's finding of at least one ground of parental unfitness.[7] Lastly, we address the circuit court's best interest determination.

---

[7] The circuit court also concluded other grounds of parental unfitness set forth in KRS 625.090(2) were established. But we need not address these other grounds since only one KRS 625.090(2) ground is required to support termination.

**Circuit Court's Factual Findings Regarding Child's Best Interest are Supported by Substantial Evidence and the Circuit Court Did Not Abuse its Discretion in Finding Termination in Child's Best Interest**

The circuit court stated it considered each factor in KRS 625.090(3) and found it in Child's best interest for Mother's parental rights to be terminated. It found the foster mother testified to Child's behavior, speech, and development improving since he entered her home about a year before the hearing.[8] It noted the foster mother testified to Child regressing in terms of his behavior and toilet training after in-person visits with Mother.

The court also found that the evidence did not support a finding that Mother made sufficient changes for it to be in Child's best interest to return to her care. It specifically found she had not provided financial support for Child, and had a pattern of substance abuse without proper treatment and of instability in maintaining a suitable home. It also found Mother did not present evidence that Child would not still be at risk of abuse or neglect if returned to her care.[9] The

---

[8] Though not mentioned in the circuit court's written findings of fact and conclusions of law, we also note the foster mother testified to her home being an adoptive home.

[9] We recognize that Mother may have attempted to offer evidence that Child would not still be at risk of abuse or neglect if returned to her care or through her testimony. *See* KRS 625.090(5). However, we must give "due regard" to the circuit court's assessment of witness credibility and weighing of the evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). And having carefully reviewed the record, there is substantial evidence (including social worker testimony) to support the circuit court's essentially finding that Mother had not shown by a preponderance of the evidence that Child would not still be at risk of abuse or neglect if returned to her care. *See* KRS 625.090(5). Thus, we discern no clear error in the circuit court's factual finding rejecting any assertion that Child would not still be at risk of abuse or neglect if returned to Mother's care.

court also found that the Cabinet had offered reasonable reunification services and that additional services were unlikely to lead to a lasting parental adjustment enabling Child's safe return to Mother's care.[10]

Based on our review of the record, we conclude the circuit court's factual findings about best interest factors are supported by substantial evidence. Moreover, we discern no abuse of discretion in its finding termination of Mother's parental rights to be in Child's best interest.

In short, following our independent examination of the record and review of the circuit court's KRS 625.090 findings, "we agree with counsel's estimation and perceive no basis warranting relief on appeal." *A.C.*, 362 S.W.3d at 372. We grant counsel's motion to withdraw by separate order.

## CONCLUSION

For the foregoing reasons, we AFFIRM.


ALL CONCUR.

---

[10] We recognize Mother may have attempted to show that additional services would likely lead to a lasting parental adjustment enabling Child's safe return to her care through her testimony. *See* KRS 625.090(4). Nonetheless, the circuit court's finding that it was not likely that additional services would result in a lasting parental adjustment enabling Child's safe return to Mother's care was supported by substantial evidence (including social worker testimony) and not clearly erroneous.

BRIEF FOR APPELLANT:

Al Miller
Central City, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky